David Spencer WALLACE and Allstate Insurance Company, Plaintiffs,

v.

ESTATE OF Nichole JACKSON, Daniel McNeil, Emily Nelson, Keejoe Attakai, State of Utah Medicaid Section, and John Does I–XX, Defendants.

State of Utah, Medicaid Section, Cross–Claimant and Counterclaim Defendant,

v.

Daniel M. McNeil, Cross–Claim Defendant and Counterclaimant.

No. 960028.

Supreme Court of Utah.

Nov. 27, 1998.

Rehearing Denied Jan. 29, 1999.

Jan Graham, Att'y Gen., Linda Luinstra, Asst. Att'y Gen., Salt Lake City, for the State

· Robert B. Sykes, Matthew H. Raty, Salt Lake City, for McNeil

HOWE, Chief Justice:

Daniel M. McNeil appeals from a summary judgment granted by the district court enforcing the State's lien against insurance proceeds he recovered as a result of an automobile accident in which he was injured. The court also awarded the State attorney fees and costs.

McNeil was a passenger in an automobile which was involved in an accident. He sustained severe brain injuries with permanent effects and profound neurological deficits. At the time of the accident, he was sixteen years of age and resided with his seventy-six-year-old grandmother and legal guardian, Lilian McNeil, who had raised him from infancy. She was a recipient of social security benefits, and McNeil was eligible for Medicaid assistance. As a condition to receiving Medicaid benefits, the guardian, pursuant to Utah Code Ann. § 26–19–4.5, assigned to the State McNeil's rights against third parties liable for his medical expenses.

The persons liable for McNeil's injuries were insured by Allstate Insurance Company, but the insurance proceeds were insufficient to satisfy all the potential claims of persons injured or killed in the accident. Therefore, Allstate filed this interpleader action requiring all persons involved in the accident to present their claims at one time so the court could divide the limited proceeds. Prior to Allstate's filing this interpleader action, the State had given Allstate notice of its assignment from McNeil. The interpleader action named the State and McNeil as defendants, and the State cross-claimed against McNeil to recover the part of the proceeds payable to him by Allstate. The State did not make a claim directly against Allstate. Subsequently, Allstate settled with all parties, and McNeil received $85,000. The district court awarded the State $43,000 of that amount for reimbursement of medical expenses it had paid on McNeil's behalf through the Medicaid program. The court then placed the remainder in a special needs trust for McNeil. He appeals.

McNeil first contends that 42 U.S.C. § 1396p(a)(1) prohibits the State from asserting a lien or seeking recovery against him for Medicaid benefits paid on his behalf. That subsection provides:

(1) No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except ... [exceptions not relevant to this case].

He asserts that Utah Code Ann. § 26–19–5(1) violates the foregoing federal statute wherein section 26–19–5(1) provides that the State's claim to recover for medical assistance furnished shall be a lien against any proceeds payable to the recipient by a third party. McNeil argues that the State may seek reimbursement directly from a third party who is legally liable for the medical assistance, but the State may not proceed as it did in the instant case against the recipi-

ent. In so doing, McNeil argues that the State has violated 42 U.S.C. § 1396p(a)(1).

There is no merit to this contention. In a companion case which we have decided today, *S.S. v. State*, 972 P.2d 439 (Utah 1998), we held that payments made by a third party do not legally become the property of the recipient until after a valid settlement which must include reimbursement to the State for Medicaid benefits. In that case, we relied upon a decision of the New York Court of Appeals in the consolidated appeals of *Cricchio v. Pennisi* and *Link v. Town of Smithtown*, 90 N.Y.2d 296, 683 N.E.2d 301, 660 N.Y.S.2d 679 (1997). There, the court stated that as a consequence of the mandatory assignment,

> the settlement proceeds are resources of the third party tortfeasor that are owed to [the state recovery office]. Accordingly, the lien on the settlement proceeds attaches to the property of the third party, and thus does not violate the statutory prohibition against imposing a lien against a beneficiary's property until after his or her death. The flaw in plaintiff[s'] theory that the lien cannot be satisfied until the recipient's death is that it fails to appreciate this critical distinction between the assets of a responsible third party and assets belonging to the Medicaid recipient.

660 N.Y.S.2d 679, 683 N.E.2d at 305 (citations omitted).

In enacting 42 U.S.C. § 1396—the anti-lien statute—Congress could not have intended to prohibit or inhibit third-party recoveries which it directed in the same Social Security Act. Once the assignment has been made, it does not matter whether the State proceeds directly against the third-party tortfeasor or whether the State simply seeks its share of the insurance proceeds paid into court in an interpleader action such as occurred in the instant case.

As part of the Social Security Act, 42 U.S.C. § 1396p(a)(1) has coexisted for many years with 42 U.S.C. § 1396a(a)(25)(A), a sister section in the Act, which mandates states to seek reimbursement from third parties who are legally liable for the medical payments. It is a familiar principle of statutory construction that sections of a statute should be harmonized wherever possible to avoid any conflict between them. Here, if that part of the insurance proceeds assigned by McNeil's guardian to the state are considered to not be McNeil's property, harmony is achieved. Thus the federal anti-lien statute is not violated when the State seeks reimbursement in an interpleader action. As stated in the State's brief:

> Placing a lien against third party settlement proceeds does not result in a "lien against the property of an individual prior to his death on account of medical assistance paid or to be paid on his behalf" because third party settlement proceeds have been specified by the recipient as belonging to the State Medicaid Agency as a precondition of the recipient's eligibility.

McNeil next contends that both federal and state statutes explicitly allow a personal injury victim to put proceeds from a personal injury settlement into a special needs trust and thereby avoid any claim by the State for Medicaid reimbursement. This same issue was raised in *S.S. v. State*. There we held that repayment of the Medicaid lien from third-party settlement funds must precede the creation of the supplemental needs trust. That holding is controlling here; once the trust is created, the State cannot make any demand upon it during McNeil's lifetime.

Lastly, McNeil contends that the State-imposed lien against his personal injury settlement proceeds constitutes a taking of his property without due process of law in violation of both the United States and Utah Constitutions. He argues that he has a property interest in his right to recover for personal injuries, and the State may not lien or take this property without affording him procedural due process or, in other words, a notice and a hearing. We again find no merit in this contention. As a condition to receiving Medicaid assistance, McNeil's legal guardian assigned to the State that portion of any third-party recovery equal to the amount of Medicaid assistance which may be rendered him. Even if we were to assume that McNeil does have a limited property interest in the funds which were assigned, his constitutional rights were not violated by the

State. He was afforded the opportunity to be heard in the district court concerning the award of part of the settlement proceeds to the State. He has now been afforded an appeal to this court. In both courts, his arguments have been asserted and both courts have ruled against him. He has been accorded full due process even though his contentions have been rejected by both courts.

Judgment affirmed.

Justice ZIMMERMAN and Justice RUSSON concur in Chief Justice HOWE's opinion.

DURHAM, Associate Chief Justice, dissenting:

I respectfully dissent in this case as well as in today's companion case, *S.S. v. State.*

McNeil, the appellant in this case, asserts that state statutes allowing the State to file liens against a Medicaid recipient for money received from third parties in personal injury suits directly contradict provisions of federal Medicaid law. Therefore, McNeil argues, the federal statutes preempt the state statutes, making the lien against McNeil invalid and requiring summary judgment in McNeil's favor. The majority holds that no such contradiction exists and that no cause for preemption has been raised. I disagree. I would hold that our state statutes do contradict provisions of federal Medicaid law and that federal law controls.

The Utah Code chapter on Medicaid specifically prevents application of any part of the chapter in a manner contrary to federal law. *See* Utah Code Ann. § 26-19-17. The Utah Code does provide for the State to recover, through a lien on recipients' property, any payments from liable third parties made to Medicaid recipients. Utah Code Ann. §§ 26-19-5(1) & -7(1)(b). The federal law, however, states clearly that "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except" when the benefits were incorrectly paid or the property is the real property of specified individuals. 42 U.S.C. § 1396p(a)(1). Fur-

thermore, "[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the state plan may be made, except" in the situations described above or when the recipient is over 65 and meets certain requirements. 42 U.S.C. § 1396p(b)(1). Both parties agree that the exceptions in these sections do not apply to McNeil and that the State has in fact acquired a lien. Thus, the federal statute conflicts with the state statute and prohibits the State's actions in this case.

The majority, absent any analysis or justification, holds that "by viewing that part of the insurance proceeds which have been assigned by McNeil's guardian to the State as not the property of McNeil" it may allow the State to reach what is in actuality McNeil's property. Federal law expressly prohibits liens being imposed against the property of individuals in McNeil's situation. *See* 42 U.S.C. § 1396p(a). The majority achieves an "end run" around this prohibition through what seems to me the illogical conclusion that the proceeds in dispute are not really McNeil's property, but perhaps his grandmother's or even the State's. The language of section 1396p clearly states "[n]o lien may be imposed against the *property* of any individual prior to his death on account of medical assistance paid." 42 U.S.C. § 1396p(a) (emphasis added). Because the statute expressly applies to any property, the majority's result arbitrarily deprives McNeil of his property. *See generally State v. Murtha,* 179 Conn. 463, 427 A.2d 807, 810 (Conn.1980) (holding that "the design of the statute is to prohibit ... efforts by states to recoup from beneficiaries ... amounts paid for medical assistance to those beneficiaries during their lifetimes").

As indicated above, all Medicaid recipients must, as a condition of eligibility,

> assign the State any rights, of the individual or of any other person who is eligible for medial assistance under this subchapter and on whose behalf the individual has the legal authority to execute an assignment of such rights, ... to payment for medical care from any third party.

42 U.S.C. § 1396k(a)(1)(A).

McNeil's grandmother did assign McNeil's right to third-party payments to Medicaid,

but the assignment was not exclusive, as evidenced by Medicaid's willingness to allow recipients to pursue third-party recovery actions independently, provided they notify Medicaid first. In other words, McNeil still retained the right to sue for and receive third-party payments, notwithstanding the State's collateral interest in recovering Medicaid benefits. *See* Utah Code Ann. § 26–19–7. Moreover, McNeil's injuries in this case—including pain and suffering and lost wages—exceeded the amount Medicaid paid on his behalf for medical care alone. Had Medicaid decided not to sue because the costs of recovery would exceed the recovery itself, *see* Utah Code Ann. § 26–19–5(4), McNeil could, nevertheless, have pursued the third party for his damages. Thus, both the State and McNeil had causes of action against Allstate. The State did not pursue its claim, however. The settlement made by all liable parties gave McNeil $85,000, and the State cross-claimed only against McNeil for reimbursement. The procedural posture of this case thus illustrates clearly that the State seeks to enforce its lien against McNeil and his property—the settlement amount. The majority's holding that the lien is against its "own property" is unrealistic. The State sought recovery from McNeil directly, possibly to save itself the expense of litigation with Allstate.[1] Although protecting public money is an admirable goal, the State should not be allowed to pursue it at the expense of persons Congress sought to protect in creating prohibition against liens of this kind.

The State argued (and the majority apparently agrees) that the above interpretation makes the third-party liability recovery portions of the statute "meaningless," and urges us to read the statute to allow liens against personal injury recoveries. The underlying assignment relied on by the State, viewed in isolation, gives Medicaid the right to make a claim either against third parties for such money or against the recipient once he receives the money. However, "a statute should not be construed in a piecemeal fashion but as a comprehensive whole." *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1045

(Utah 1991). Therefore, because another section of the Medicaid statute prohibits not only liens against Medicaid recipients but also any recovery for medical assistance correctly paid, *see* 42 U.S.C. § 1396p, the proper conclusion is that the State can enforce the assignment only by instituting claims directly against the liable third parties.

Other parts of the federal statute make the intent of Congress clear. The federal government requires states to

(A) ... take all reasonable measures to ascertain the *legal liability of third parties* ... to pay for care and services available under the plan, including—

(I) the collection of sufficient information ... to enable the State to *pursue claims against such third parties,* ...

(B) ... in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual ... the State ... will *seek reimbursement* for such assistance to the extent *of such legal liability.*

42 U.S.C. § 1396a(a)(25) (emphasis added).

It is true, as the State argues, that these statutes reflect the legislative intent that Medicaid should recover its health care expenditures where third parties caused a Medicaid recipient to incur them. However, the language of various sections of the statute indicates that Congress anticipated that third-party recovery would come directly from the third parties and not from the recipient. The language in section 1396a(25) states plainly that states should pursue their third-party liability claims against the third parties themselves. *See* 42 U.S.C. § 1396a(25). It does not mention recovery from the Medicaid recipient. The Utah statute, on the other hand, allows the department "to recover medical assistance provided as a result of the injury, disease, or disability" directly from the Medicaid recipient through a lien. Utah Code Ann. § 26–19–5(1) & –7(2). Congress plainly did not intend to authorize this method of collection.

---

**1.** The recipient must pay all of the State's litigation expenses incurred from fighting with the recipient if the agency wins. Utah Code Ann.

§ 26–19–7(2). The State must bear its own expenses when litigating with a third party.

Congress's understanding of a Medicaid recipient's plight could rationally have led it to require Medicaid agencies to proceed against the third party and not against the recipient. People receive Medicaid assistance when they have no other resources to pay for medical care. Requiring such persons to defend against liens is inconsistent with the entire benefit system created by the federal statutes. Congress had good reason to prohibit liens against recipients and to require the agencies to go after the liable third parties directly, thereby possibly reducing the injured party's burden.[2]

Moreover, the Department of Health and Human Services has made all state Medicaid directors aware that liens are only appropriate against *the third party's property* prior to an award to the injured party and are forbidden against a recipient's property.

> Section 1917(a)[42 U.S.C. § 1396p(a) ] precludes states from placing liens on an individual's property. However, because a *potential* personal injury settlement is not yet the plaintiff's property, it can be subject to a TPL [Third Party Liability] lien.... To avoid the lien issue, but protect its rights, a state could ... intervene in the case and represent its own interests directly. Since the individual has assigned to the state his or her rights to recover payment for medical care under section 1912, the state has an interest which it can represent directly.[ [3] ]

Memorandum from Sally K. Richardson, Director of the Medicaid Bureau to all state medicaid directors (June 5, 1996), at 3 (emphasis added). A lien on a "potential personal injury settlement" most logically means on the insurance proceeds themselves, or on the assets of the third party.[4] The Richardson memo does not contain the option of placing a lien on the recipient's recovery *after* the

recipient has proven liability and thus established a legal claim to the specific fund, as the State did in this case. The State chose to wait until legal ownership of the property transferred to McNeil before attempting to enforce its claim. That the money is not in McNeil's physical possession does not matter; it is McNeil's money. The State should not be permitted to proceed in this manner given the federal statute's prohibition on liens against recipients' property.

The Medicaid statute further confirms this interpretation in part C of the assignment section, which mandates recipients to "cooperate with the State in identifying, and providing information *to assist the State in pursuing, any third party* who may be liable." 42 U.S.C. § 1396k(a)(1)(C) (emphasis added). Although this part specifically addresses the duties of a Medicaid recipient, the emphasized language indicates that Congress expected the states to sue the third parties directly rather than waiting for the recipient to collect and then suing him.

Furthermore, the State's own Medicaid manual requires that States "seek recovery *from the third party* whenever a claim or claims have been paid for which a third party is liable. (See § 3904.3)." State Medicaid Manual, HCFA Pub. 45–3, § 3902, Transmittal No. 53 (May 1991) (emphasis added). Similarly, another provision states that "[a]n agency must seek reimbursement *from a liable third party* on all claims for which it determines that the amount it reasonably expects to recover will be greater than the costs of recovery." 42 C.F.R § 433.140(f)(1). The State has failed to do so in this case.

The State relies on certain letters from the director of the Medicaid Bureau recognizing the tension in the statutes and responding with the conclusion that opening the assignment of payments makes any of the recipi-

---

**2.** When an agency collects more than it has expended on an individual, it must reimburse that individual for the remainder. 42 U.S.C. § 1396k(b).

**3.** This memorandum also suggests that if the court places proceeds in a trust, the proceeds belong to the trust and not the individual, and thus a state can lien the trust. *Id.* However, the memorandum goes on to say that such liens will not work against special needs trusts, such as the

one created for McNeil by the district court. *Id.* at 3–5; 42 U.S.C. § 1396p(d)(4). Thus the State may not exercise this option in this case.

**4.** The New York Court of Appeals has read this phrase to include the type of lien placed in this case, but that reading is forced in light of the statutes. *See Cricchio v. Pennisi*, 90 N.Y.2d 296, 660 N.Y.S.2d 679, 683 N.E.2d 301 (N.Y.1997).

ent's proceeds from a personal injury case actually the property of Medicaid. *See* Letter from Sally K. Richardson, Director Medicaid Bureau, to Sonia Crannage, Sinnreich & Crannage Attorneys at Law (December 20, 1993); Letter from Sally K. Richardson, Director Medicaid Bureau, to Howard K. Gibbs, Assistant General Counsel, Human Resources Administration (December 20, 1993). These communications were apparently drafted without the benefit of any public hearing, and they do not represent an official agency determination on the matter. Therefore, we should not afford them any particular deference. Furthermore, even if they represented official positions, a proper reading of the federal statutes would require us to reject their rationale. *See, e.g., Williams v. Mountain States Tel. & Tel. Co.,* 763 P.2d 796, 799 (Utah 1988) (reversing agency decision that directly contradicts statutory language).

Another aspect of the statutory scheme that supports this reading of the statute is the incentive the federal government gives to the states when they successfully collect third-party liability money: for any successful collection, the federal government returns fifteen percent of the money recovered on its behalf to the collecting agency as an "incentive payment[ ] for enforcement and collection." 42 U.S.C. § 1396b(p). This incentive scheme implicitly assumes that the state will incur costs in recovering third-party payments and that the incentives will help to offset such costs. When the State places a

lien on money already received by Medicaid recipients, it basically seeks a "free ride"; the recipient bears all of the investigation and litigation costs, and the State has to pay only for the lien. Additionally, if the recipient challenges the lien and loses, the recipient must also pay the State's attorney fees and costs under Utah law. Allowing the State to operate in this manner, and then collect attorney fees and the federal incentive fee, results in a windfall for the State from the pockets of injured and needy parties. Congress could hardly have intended such a result, especially in light of language elsewhere in the statute.

The State bases its cross-claim against McNeil on Utah Code Ann. §§ 26–19–5(1) & –7(2). Because these sections directly contradict federal law, 42 U.S.C. § 1396p(a), the State's liens should be declared illegal under Utah Code Ann. § 26–19–17. Therefore, I would reverse the district court's grant of summary judgment in favor of the State and grant summary judgment to McNeil. The State's lien is unenforceable.[5]

Justice STEWART concurs in Associate Chief Justice DURHAM's dissenting opinion.

---

5. The briefs also raised the important issue of whether the State has a priority lien against the third party and thus recovers 100% of its expenses before anyone else collects anything, or whether it can recover an amount proportional to the expenses of the other claimants. We obviously do not reach this issue in this case.