Heidi **AHLBORN**, Plaintiff,

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES; Kurt Knickrehm, Director of the Arkansas Department of Human Services; Wayne Olive, Director of the Third Party Liability Unit; Roy Jeffus, Interim Director, Division of Medical Services of the Arkansas Department of Human Services, Defendants.**

No. 4:02–CV–00607 GTE.

United States District Court,
E.D. Arkansas,
Western Division.

Aug. 22, 2003.

H. David Blair, Blair & Stroud, Phillip B. Farris, Gregg & Harris, Batesville, AR, for plaintiff.

Richard B. Dahlgren, Arkansas Department of Human Services, Office of Chief Counsel, Little Rock, AR, for defendants.

## ORDER GRANTING SUMMARY JUDGMENT

EISELE, District Judge.

This matter is before the Court on cross motions for summary judgment. The parties agree that the issue in this case—the extent to which Defendants are entitled to recoup Medicaid benefits paid on Plaintiff's behalf from settlement proceeds received by Plaintiff from her personal injury lawsuit—is a statutory construction issue for the Court. The parties have entered into a stipulation agreeing to the amount of reimbursement, depending on which party prevails, making it unnecessary for the Court to hear evidence regarding damages or make any damage determinations in this case. (See Stipulation of Parties, docket entry 6).

The issue has been fully briefed. On August 20, 2003, the Court heard oral argument on the motions. After considering the written submissions of the parties and their oral presentations, the Court finds that Defendants are entitled to judgment as a matter of law.

## I. Facts Without Controversy

Heidi Ahlborn suffered severe, permanently disabling injuries in a motor vehicle accident on January 2, 1996. Ms. Ahlborn filed suit against various individual and entity defendants alleged to be responsible for her injuries. Ms. Ahlborn sustained injuries and losses from the January 2, 1996 motor vehicle accident which would have given rise to the following elements of damage under Arkansas law:

(a) Permanent injury;

(b) Past and future medical expenses;

(c) Past and future pain, suffering and mental anguish;

(d) Past loss of earnings and working time;

(e) Permanent impairment of ability to earn in the future.

In 2002, a compromise settlement was reached with the alleged tort-feasors pursuant to which the sum of $550,000 was paid to Ms. Ahlborn.[1] The settlement amount represented a compromise of plaintiff's tort claim. No effort was made to allocate by agreement or adjudication the proceeds of the compromise settlement among the elements of damage arising under Arkansas law.

Following her accident, Plaintiff applied for and was granted Medicaid benefits to pay for her extensive medical treatment. The Medicaid program in Arkansas is funded with federal and state dollars and is administered by the Defendant Arkansas Department of Human Services ("ADHS"). ADHS provided Medicaid benefits to or on behalf of Plaintiff for medical care.

---

1. Of that amount, $25,000 was paid by Plaintiff's underinsured motorist coverage.

The Defendant Director of ADHS asserted a claim or lien pursuant to Ark. Code Ann. § 20–77–310, *et seq.*, in the amount of $219,156.78 against any settlement proceeds recovered by Plaintiff. That sum is being held by Plaintiffs' attorneys in a trust account pending resolution of this lawsuit, which was initiated on September 30, 2002, by Plaintiff Heidi Ahlborn. The Defendants are all state entities or officials with responsibilities related to the administration and enforcement of liens or rights by reason of payments made to or on behalf of Medicaid beneficiaries.[2]

## II. *Discussion*

The parties dispute the extent of Defendants' right of reimbursement from the settlement proceeds. Plaintiff contends the Defendants' Medicaid recovery is limited to that portion of the settlement proceeds which fairly represents the past medical expense component of her recovery. Defendants contend that they are entitled to a full reimbursement of all Medicaid funds paid on Plaintiff's behalf. The parties have stipulated to the respective damage amounts—if Plaintiff prevails, Defendants shall recover $35,581.47; if Defendants prevail, Defendants shall recover $215,645.30.

### MEDICAID PROGRAM

The federal Medicaid statutes were enacted in 1965 as Title XIX of the Social Security Act, a publicly funded program to provide medical care to those lacking the resources to obtain essential medical services. 42 U.S.C.A. §§ 1396–1396v; *Norwest Bank of N.D., N.A v. Doth,* 159 F.3d 328, 331 (8th Cir.1998). Medicaid, which was intended to be the payor of last resort, is jointly funded by the federal and state governments. 42 C.F.R. § 430.0.

The federal government provides financial assistance to enable "... each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of [individuals], whose income and resources are insufficient to meet the costs of necessary medical services ..." Participation in the program is voluntary, but once a state elects to participate, it must comply with the requirements set forth in the Medicaid Act and in regulations promulgated by the United States Secretary of Health and Human Services ("the Secretary") through the Centers for Medicare & Medicaid Services ("CMS") which administers Medicaid.[3] *See* 42 C.F.R. § 447.302. Participating states must submit for CMS's approval a state Medicaid plan. *See generally,* 42 U.S.C.A. § 1396a(a).

Arkansas participates in the federal Medicaid program and has designated Defendant ADHS as the single state agency responsible for administrating the State plan. *See* Ark.Code Ann. § 20–76–201(1). Arkansas' Medicaid plan, which the Secretary approved as consistent with the federal statute and implementing regulations, is codified at Ark.Code Ann. § 20–77–301 *et seq.*

2. The amount of money paid on Ms. Alhborn's behalf as Medicaid benefits varies slightly in the pleadings, as she was still receiving benefits at the time of the settlement of her tort claims and the filing of this action. It is undisputed that Defendants had paid $216,645.20 in Medicaid proceeds at that time of the settlement of the third party action. However, Defendants are only seeking reimbursement in the sum of $215,645.30, if they prevail upon the statutory construction issue. The slight discrepancy in the numbers reflects adjustments made to eliminate Medicaid payments made on Ms. Ahlborn's behalf for medical care unrelated to injuries sustained in the car accident.

3. The federal agency responsible for administering Medicaid was formerly known as the Health Care Financing Administration, and frequently referred to as HCFA.

Federal law requires that participating states include in their Medicaid plan the requirement that recipients of Medicaid funds assign to the state the right to receive payments for medical expenses from third parties liable for payment of those expenses. 42 U.S.C. § 1396k. The statute provides in pertinent part:

(a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall—

(1) provide that, as a condition of eligibility for medical assistance under the State plan ... the individual is required—

(A) to assign to the States any rights, of the individual ... to payment for medical care from any third party;

. . . . .

(b) Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual.

*Id.*

In compliance with the federal requirement, Arkansas' plan provides ADHS with an automatic assignment of a Medicaid recipient's right of recovery from any settlement. The Arkansas statute reads:

(a) As a condition of eligibility, every Medicaid applicant shall automatically assign his or her right to any settlement, judgment, or award which may be obtained against any third party to the Department of Human Services to the full extent of any amount which may be paid by Medicaid for the benefit of the applicant.

(b) The application for Medicaid benefits shall, in itself, constitute an assignment by operation of law.

(c) The assignment shall be considered a statutory lien on any settlement, judgment, or award received by the recipient from a third party.

Ark.Code Ann. § 20–77–307.

Plaintiff argues the Arkansas statute assigns away more rights than required by 42 U.S.C. § 1396k(a), in conflict with a second provision of the federal Medicaid statute, 42 U.S.C. § 1396p(a)(1). This provision, often referred to as the "anti-lien provision", provides that

[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan ..." [4]

Defendants contend that personal injury settlements assigned to the State in this context are not property of the individual beneficiaries of Medicaid assistance within the meaning of 42 U.S.C. § 1396p(a)(1). Their argument is based upon a reading of the "anti-lien" provision which makes it inapplicable to a Medicaid recipient's cause of action assigned away in exchange for Medicaid eligibility. Under this construction, although an injured party has a property right in her cause of action against a

---

**4.** The statute contains two exceptions to the lien prohibition, but neither is applicable here.

third party, the right is disposed of to the extent of medical expenses paid by Medicaid when she agrees, by virtue of the assignment, to apply *all* proceeds from a liable third-party to the state to the full extent of Medicaid benefits paid on her behalf. Thus, Defendants reason, a Medicaid recipient has no property interest in settlement funds from the third-party until *after* the State and federal government have been reimbursed for their Medicaid expenditures.

Plaintiff's argument centers on the extent of the assignment. Plaintiff concedes that ADHS may force her to assign her tort claims to the extent of any amounts payable for medical expenses. She objects, however, to an assignment of her entire cause of action, contending that the federal scheme prohibits ADHS from attaching anything more than her claim for health care items or services from a third-party.

In support of her contention, Plaintiff relies on 42 U.S.C. § 1396a(a)(25)(H), which provides that:

> to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the State has in effect laws under which, *to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party*

*for such health care items or services;* . . .

(emphasis added).

The Plaintiff reasons that the State is only entitled to a statutory assignment of a Medicaid recipient's rights to third-party payments for "health care items or services," not for the entire cause of action, which may include damages for lost wages, pain and suffering and other non-health-care related items. Construing the statute in such a fashion, Plaintiff argues, harmonizes the state procedure with 42 U.S.C. § 1396a(a)(25)(H) and § 1396p(a)(1). Construing the statute otherwise, Plaintiff contends, permits the State to place a lien on Plaintiff's property in violation of the federal Medicaid Act's anti-lien provision.

## ANALYSIS OF APPLICABLE LAW

In support of its position, Plaintiff relies upon the Minnesota Supreme Court's decision in *Martin v. City of Rochester,* 642 N.W.2d 1 (Minn.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 2668, 156 L.Ed.2d 655, 71 U.S.L.W. 3116 (2003). This is the only decision, to the Court's knowledge, adopting the position advocated by Plaintiff. The *Martin* decision found Minnesota's state Medicaid subrogation provision[5] to be conflict preempted by the federal anti-lien provision to the extent that it permitted the state, through its assignment provision, to obtain anything more from a Medicaid recipient than the recipient's "rights to payment for medical care from third parties liable for the injuries that

---

**5.** Minnesota's statutory assignment provision reads in pertinent part:

> To be eligible for medical assistance a person must have applied or must agree to apply all proceeds received or receivable by the person . . . from any third person liable for the costs of medical care for the person . . . The state agency shall require from any applicant or recipient of medical assistance the assignment of any rights to medical

support and third party payments. . . . By signing an application for medical assistance, a person assigns to the department of human services all rights the person may have to medical support or payments for medical expenses from any other person or entity on their own or their dependent's behalf and agrees to cooperate with the state in . . . obtaining third party payments.

Minn.Stat. § 256B.056, subd. 6.

necessitated medical assistance." *Martin,* 642 N.W.2d at 18.

Central to the decision in *Martin* is the court's determination that §§ 1396k and 1396a(a)(25)(H) of the federal Medicaid statute limit the required assignment of rights to payment for medical care only. *Id.,* at 12–13. Thus, "a state's right to recover from third parties is specifically limited under federal law to payment *for health care items or services only.*" Starting with this premise, the *Martin* court concludes that the right assigned to states is likewise limited. *Id.,* at 13. The court summarizes its analysis as follows:

> The foregoing analysis convinces us that there is no need to engage in arduous or belabored statutory construction to harmonize the three federal statutes. Taking notice of the plain meaning of each is sufficient to achieve harmony. The anti-lien provision [§ 1398k)] protects the personal property of a medical assistance recipient—here, [Plaintiff's cause of action]—from a state's effort to recover for medical expenses. The assignment transfers to the state the recipient's right to recover medical expenses, and therefore the ability to pursue directly potentially liable third parties for medical assistance paid. The anti-lien provision protects all of a recipient's nonassigned rights to recover. The recovery provision [§ 1396a(a)(25)(H)] on the other hand, requires that the state pursue the third parties for medical expenses paid by the state, and the state does so under the assignment. The result is that the anti-lien provision operates in harmony with other federal Medicaid provisions and gives effect to all of the provisions.

*Id.,* at 13

The dissent in *Martin* concludes otherwise.

Focusing on the scope of the initial assignment, the dissent concludes that a state's assignment provision (requiring a recipient to apply or to agree to apply her settlement rights to the full extent of any Medicaid benefits paid on her behalf) poses no conflict with the federal anti-lien provision. *Martin,* 642 N.W.2d at 28–29 (dissent). The dissent in *Martin* and the highest courts of Utah and Washington reconcile any apparent conflict with § 1396p's anti-lien provision by finding that the anti-lien provision drops out of the analysis once a Medicaid recipient assigns his cause of action because the recipient no longer has any interest in the property (his or her cause of action against third parties) to the extent of the state's expenditures. *See Wallace v. Estate of Jackson,* 972 P.2d 446 (Utah 1998), *cert. denied, McNeil v. Utah, Medicaid Section,* 528 U.S. 810, 120 S.Ct. 42, 145 L.Ed.2d 38 (1999); and *Wilson v. State,* 142 Wash.2d 40, 10 P.3d 1061 (2000).

In *Wallace,* the Utah Supreme Court determined that a third party's payments do not legally become the property of the recipient until after settlement " 'because third party settlement proceeds have been specified by the recipient as belonging to the State Medicaid Agency as a precondition of the recipient's eligibility.' " *Id.,* 972 P.2d at 448 (quoting state's brief). Similarly, the Washington Supreme Court held in *Wilson* that all settlement proceeds belonged to the state because they were assigned as such. The Court found that "due to the lien being placed on the settlement prior to it becoming the property of the Medicaid recipient, the [anti-lien provision] is irrelevant." *Wilson,* 10 P.3d at 1065 n. 2. The court in *Wilson* specifically rejected limiting the permissible scope of a state's recovery from third-parties, finding that, "the state is not limited to recovery from only that portion of the settlement specifically allocated to medical expenses. The federal statute states recovery is to the extent of payment made by the state

for health care items or services." *Id.*, 10 P.3d at 1066.

The Eighth Circuit in *Norwest Bank of N.D., N.A. v. Doth,* 159 F.3d 328, 333–34 (8th Cir.1998), construing Minnesota's Medicaid statutes, held that the state could satisfy its lien from settlement proceeds before the funds were placed in a supplemental needs trust for the recipient. The *Doth* Court specifically noted that it was not passing "on the question of whether the lien [could] be satisfied out of the entire amount of the personal injury award or settlement, or only that portion of the settlement attributable to past medical expenses." *Id.*, 159 F.3d at 334.

The Secretary has consistently adopted the position urged by Defendants, taking the position that States must require, as a condition of eligibility, that recipients assign to the State their right to recover from third parties and that, from any such recovery, the State must recover the full amount of benefits paid on behalf of the recipient. *See* Defendants' Exh. 3, HCFA letter to State Agencies received June 13, 1988; Exh. 21 and 22, HCFA memorandums.

The Secretary has not hesitated to enforce its position against participating States, should they fail to recover from a Medicaid recipient subsequently acquired settlement proceeds up to the full amount of Medicaid benefits paid on the recipient's behalf. In such cases, to the extent a State allowed a Medicaid recipient to retain settlement proceeds without fully reimbursing the State, HCFA recoups from the State the federal share of such Medicaid benefits. (See Exhibits 24 and 25 to Defendants' motion, Department of Health and Human Services Department Appeals Board decisions affirming the Secretary's decision to impose financial penalties on California and Washington for accepting less than a full recovery of Medicaid benefits paid).

The Court finds that the Secretary's position is entitled to due consideration. Cf. *United States v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994)(reliance on Secretary's "significant expertise" particularly appropriate in the context of "a complex and highly technical regulatory program" (internal quotation marks omitted)); *Schweiker v. Gray Panthers,* 453 U.S. 34, 43–44, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981) (Secretary granted "exceptionally broad authority" under the Medicaid statute).

■ If, at the time Plaintiff applied for medical benefits, her lawsuit—which Plaintiff agrees is a property right—had been realized or reduced to a sum certain, she would have been forced to expend that resource before she would have qualified for Medicaid benefits. Thus, this is not—as Plaintiff argues—a situation in which Plaintiff's eligibility for Medicaid benefits is being determined retroactively after her tort claim is liquidated. Further, the Court disagrees with Plaintiff's contention that an unliquidated tort claim would not constitute a "resource" for purposes of determining an applicant's eligibility for Medicaid benefits.

■ In determining whether an applicant is eligible to receive Medicaid, Congress instructed states to consider an individual's income and resources. 42 U.S.C. § 1382. Congress does not define "resources" affirmatively, but excludes from the definition of "resources" certain categories of property. 42 U.S.C. § 1382b. There is nothing in the language of the Act to exclude from the definition of "resources" an unliquidated tort claim against a third-party. Given the approach of the statute, which defines by exclusion, the Court finds that a Medicaid applicant's unliquidated tort claim against a third-

party is both a "resource" and "property" for purposes of the Medicaid Act. Thus, there is nothing incongruent about requiring an applicant, as a condition of Medicaid eligibility, to assign to the State his entire "rights to payment from third parties." 42 U.S.C. § 1396k.

As stated by the Utah Supreme Court: Placing a lien against third party settlement proceeds does not result in a "lien against the property of an individual prior to his death on account of medical assistance paid or to be paid on his behalf" [which the anti-lien provision prohibits] because third party settlement proceeds have been specified by the recipient as belonging to the State Medicaid Agency as a precondition of the recipient's eligibility.

*Wallace*, 972 P.2d at 448 (referencing the State's brief).

Section 1396a(a)(25), which the Plaintiff construes as limiting Arkansas' right of assignment, is harmonized with the remainder of the Medicaid statute by a broader reading. The Medicaid statute requires States to ascertain the "legal liability" of third parties "to pay for care and services" rendered under the Medicaid program, 42 U.S.C. § 1396a(a)(25)(A), and, to pursue recovery to the full *"extent of such legal liability,"* 42 U.S.C. § 1396a(a)(25)(B)(emphasis added). Full effect to the statute as a whole is supported by an interpretation of the statutory provisions that does not limit States to the compromise value assigned to the medical expense component of the assigned claim during settlement negotiations. *See also* 42 U.S.C. § 1396k(a)(1)(A)(assigning right to "payment for medical care"); *Wilson*, 10 P.3d at 1066 ("[T]he assignment is for the right of payment from the third party, not solely the right to pursue a cause of action against the third party.").

Although the statutory language in question is far from a model of clarity, when the Court considers the statute as a whole, the Secretary's position on the issue, and the legislative history of the Medicaid statute,[6] it concludes that the Defendants have the better argument. The Medicaid statute is intended to vest States with the right to recover the full payment of medical expenses by a third party liable for causing the injuries which triggered the need for medical care.

As a public policy matter, the majority approach avoids the problem of determining what portion of a settlement is fairly attributable to payment for medical expenses. In this case, the parties have reached a stipulation on the apportionment issue. In general, however, adopting the approach advocated by Plaintiff would encourage manipulation of the allocation of settlement amounts. It would also place upon States the additional burden of proving up the past medical expense component of a compromise settlement or challenging the allocation made by others with no interest in placing an appropriate value on that component of recovery. Conversely, the approach this Court adopts, which has been adopted by all but one court confronted with the issue, "prevents manipulation of tort awards by recipients who seek to prevent the public from being reimbursed for the funds it has advanced for their medical care." *Martin*, 642 N.W.2d at 22 (internal quotes and citations omitted).

## CONCLUSION

For the reasons discussed herein,

---

6. Congress specifically "intended [Medicaid] to be the payer of last resort, that is, other available resources must be used before Medicaid pays for the care of an individual enrolled in the Medicaid program." S.Rep. No. 99–146, at 312 (1986), *reprinted in* 1986 U.S.C.C.A.N. 42, 279.

IT IS THEREFORE ORDERED that Plaintiff's Cross–Motion for Summary Judgment, Docket No. 14, be and it is hereby, DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment, Docket No. 7, be and it is hereby, GRANTED.

Judgment will be entered separately.

### JUDGMENT

Pursuant to the Order filed in this matter this date granting summary judgment in favor of the Defendants, it is Considered, Ordered, and Adjudged that the Complaint in this matter be, and it hereby is, dismissed in its entirety.