2000 UT 39

**STATE of Utah, By and Through the OFFICE OF RECOVERY SERVICES, Plaintiff and Appellee,**

v.

**John L. McCOY, Defendant and Appellant.**

No. 970340.

Supreme Court of Utah.

April 14, 2000.

Jan Graham, Att'y Gen., Stephanie M. Saperstein, Karma Dixon, Asst. Att'ys Gen., Salt Lake· City, for plaintiff.

John L.·McCoy, pro se.

RUSSON, Associate Chief Justice:

¶ 1 Defendant John L. McCoy appeals from the trial court's grant of summary judgment in favor of the State requiring McCoy to reimburse the State for medical assistance received by McCoy's client, David Sevey.

## BACKGROUND

¶ 2 On July 10, 1993, David Sevey was injured when he slipped and fell on a sidewalk in front of a K–Mart store. The property was owned by G. Walter Gasser & Associates ("Gasser").[1] Lacking adequate funds to pay his medical bills, which exceeded $16,-000, Sevey requested medical assistance from the State of Utah. The State paid $8,846.92 toward Sevey's medical bills.

¶ 3 Thereafter, Sevey retained an attorney, John L. McCoy, to seek recovery of damages from Gasser. Before proceeding against any potentially liable ·parties, McCoy contacted the Office of Recovery Services ("ORS") requesting· consent to bring an action ·on the State's behalf against Gasser's insurer. On

---

1. The record names the property owner alternately as Gasser and CDI. For purposes of this opinion, we refer to Gasser as the owner.

July 19, 1994, ORS wrote a letter to McCoy declining McCoy's request to represent ORS and stating that ORS would seek full recovery directly from any liable third parties. Additionally, ORS requested that McCoy "discuss particulars of this case with [ORS] prior to any settlement negotiations." McCoy wrote a letter responding to ORS, explaining, "Your letter of July 19, 1994 leaves me no other choice but not to include your claim for medical expenses in any action that I take." On July 21, 1994, ORS sent notices to Sevey, McCoy, and K–Mart explaining that the State has a lien against any money payable to Sevey up to $8,846.92

¶ 4 On July 20, 1995, McCoy sent a demand letter to Gasser's insurer, Great American Insurance Company ("Great American"),[2] demanding payment on behalf of Sevey. Specifically, McCoy requested to settle with Great American "for the sum of $35,000.00, plus medical bills of $8,000.00." Explaining his demand for medical costs, McCoy noted in his letter to Great American:

> [Sevey's] medical bills from the tibia and fibula fracture are $7,297.66, copies of which are attached. These do not include the first bills for the removal of the patella which amounted to roughly $8,000.00, which the State of Utah paid. The State of Utah will not allow me to pursue their claim, therefore, I do not make any demand for any medical bills that the State has paid or will pay.

McCoy added that Sevey's total medical bills "even excluding the medical bills that the State has advanced are $8,000.00."

¶ 5 McCoy eventually settled Sevey's dispute with Great American, and on October 9, 1995, Great American issued two checks to McCoy, both listing McCoy and Sevey as co-payees. One check for $22,800 was labeled as payment for "BODILY INJURY"; the other check for $5,000 was labeled as "MEDICAL PAYMENT." Upon receipt of the settlement proceeds, McCoy placed $8,846.92 in his client trust account. On October 13, 1995, Sevey signed a document releasing

both K–Mart and Gasser from "any and all claims" resulting from the slip-and-fall incident.

¶ 6 Shortly thereafter, the State commenced this action against McCoy pursuant to the Utah Medical Benefits Recovery Act (the "Act"), alleging that the State was entitled to recover $8,846.92 from the settlement proceeds. The State moved for summary judgment on its claim, arguing that the Act required McCoy to reimburse the State in full.

¶ 7 In response, McCoy contended first that the State's claim under the Act was preempted by a federal anti-lien statute. Second, McCoy claimed that the State was not entitled to reimbursement from the settlement proceeds because he specifically excluded the $8,846.92 from his settlement negotiations. Third, in the alternative, McCoy contended that if the State was entitled to reimbursement from the settlement proceeds, the State's recovery was limited to the $5,000 designated as medical payment. Fourth, McCoy argued that in the event he must reimburse the State, he is entitled to attorney fees for procuring the settlement.

¶ 8 The trial court granted the State's motion for summary judgment, ordering McCoy to pay the full amount of $8,846.92 to the State with no reduction for attorney fees. McCoy now appeals.

## STANDARD OF REVIEW

¶ 9 Summary judgment is proper when there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(e); *Thompson v. Jess,* 1999 UT 22, ¶ 12, 979 P.2d 322. We review a trial court's grant or denial of summary judgment for correctness and accord no deference to the trial court's legal conclusions. *See Malibu Inv. Co. v. Sparks,* 2000 UT 30, ¶ 12, 996 P.2d 1043. We also note that when interpreting a legislative enactment, our primary role is to give effect to the legislature's intent as set forth in the

**2.** The record names the insurer alternately as Great American Insurance Company and American National Fire Insurance Company. For purposes of this opinion, we refer to the insurer as "Great American."

statute's plain language. *See Evans v. State,* 963 P.2d 177, 184 (Utah 1998).

## ANALYSIS

### I. PREEMPTION UNDER THE FEDERAL ANTI–LIEN STATUTE

¶ 10 McCoy's first argument is that the State's claim for reimbursement under the Act is preempted by the federal anti-lien statute, which reads:

> No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid . . . on his behalf under the State plan.

42 U.S.C.A. § 1396p(a)(1) (Supp.1999). This issue was resolved by two cases decided after this appeal was filed, *S.S. v. State,* 972 P.2d 439 (Utah 1998), and *Wallace v. Estate of Jackson,* 972 P.2d 446 (Utah 1998). *S.S.* and *Wallace* held that under the Act, any third-party recovery does not become the "property" of the recipient until the recipient has reimbursed the State for all medical assistance the State provided. *See S.S.,* 972 P.2d at 442; *Wallace,* 972 P.2d at 448. As a result, the State's attempt to recover from the settlement proceeds does not amount to a lien upon the recipient's "property." *See S.S.,* 972 P.2d at 442; *Wallace,* 972 P.2d at 448. Therefore, the Act does not conflict with the federal statute.

### II. THE STATE'S RIGHT TO REIMBURSEMENT

¶ 11 McCoy next argues that the State is not entitled to any reimbursement from the settlement proceeds because McCoy specifically excluded the State's claim for $8,846.92 from his settlement negotiations. Alternatively, McCoy contends that, if the State is entitled to reimbursement from the proceeds, the State's recovery is limited to the $5,000 specifically designated as medical payment.

¶ 12 Three provisions of the Act are determinative of McCoy's arguments. First, the Act provides:

> (1) (a) *To the extent that medical assistance is actually provided to a recipient, all benefits for medical services or payments from a third party otherwise payable to or on behalf of a recipient are assigned by operation of law to the department if the department provides, or becomes obligated to provide, medical assistance,* regardless of who made application for the benefits on behalf of the recipient.

Utah Code Ann. § 26–19–4.5(1)(a) (1998) (emphasis added).[3] Second, the Act provides in pertinent part:

> (b) The department's claim to recover medical assistance provided as a result of the injury . . . is a lien against *any proceeds* payable to or on behalf of the recipient by that third party.

*Id.* § 26–19–5(1)(b) (emphasis added). Third, the Act states:

> (b) The department *may recover in full* from the recipient or any party to which the proceeds were made payable *all medical assistance which it has provided* and retains its right to commence an independent action against the third party. . . .

*Id.* § 26–19–7(2)(b) (emphasis added). Thus, under section 26–19–4.5, the settlement proceeds are assigned by operation of law to the State to the extent that the State has provided benefits to Sevey, i.e., $8,846.92. Additionally, under section 26–19–5, the State possesses a lien against the entire settlement proceeds, including both the amount designated as medical payment and the amount designated as bodily injury payment. Finally, under section 26–19–7, the State is entitled to recover in full from the settlement proceeds all of the medical assistance the State provided to Sevey. Therefore, under these provisions of the Act, the State is entitled to recover $8,846.92 from the settlement proceeds.

### III. MCCOY'S ENTITLEMENT TO ATTORNEY FEES

¶ 13 Finally, McCoy argues that if the State is entitled to recover from the settle-

---

**3.** The "department" to which the Act refers is the Department of Health, which was created pursu-

ant to Utah Code Ann. § 26–1–4 (Supp.1981).

ment proceeds, he is entitled to recover attorney fees from the State for procuring the settlement. The State contends that McCoy is not entitled to attorney fees under the Act because he lacked consent to bring an action on the State's behalf.

¶ 14 Before determining whether the Act requires the State to pay attorney fees, we must examine the provision of the Act that requires consent to bring a claim on the State's behalf. This provision states:

> (1) (a) A recipient may not file a claim, commence an action, or settle, compromise, release, or waive a claim against a third party for recovery of medical costs for an injury, disease, or disability for which the department has provided or has become obligated to provide medical assistance, without the department's written consent.

Utah Code Ann. § 26–19–7(1)(a) (1998). Thus, under this statute, a recipient must seek the State's consent before attempting to recover from a third party for any medical costs paid by the State. We explained in *S.S. v. State* that "[t]his provision protects both the liable third party and the State from ill-informed or devious action by the recipient." 972 P.2d 439, 441 (Utah 1998).

¶ 15 In the instant case, it is undisputed that McCoy lacked the State's consent to pursue the State's claim against Great American. McCoy requested, and the State denied, consent to pursue the State's claim. McCoy then provided notice to the State and the third party that he was not seeking to recover for those medical costs for which the State had provided assistance to Sevey. Rather, McCoy expressly excluded the State's claim for reimbursement from his settlement negotiations. Thus, in accordance with the Act, McCoy did not settle any claim for medical costs for which the State provided assistance. The State nonetheless argues that because McCoy lacked consent to bring an action on the State's behalf, the State—although demanding payment from the recipient's settlement proceeds—does not have to pay a share of McCoy's attorney fees in securing that settlement.

■ ¶ 16 We now turn to the provision of the Act governing awards of attorney fees and costs. This provision reads:

> (4) The department may not pay more than 33% of its total recovery for attorney's fees, but shall pay a proportionate share of the costs in an action that is commenced with the department's written consent.

Utah Code Ann. § 26–19–7(4) (1998). Subsection (4) of section 26–19–7 is divided by a comma into two separate parts, the former dealing with attorney fees and the latter dealing with costs. We look first to the portion that addresses awards of costs. The plain language of this portion of subsection (4) is narrowed to award only the costs of "an *action* . . . commenced with the department's written consent." *Id.* (emphasis added). Thus, a recipient cannot recover "costs" where an action has not commenced even though the recipient has "file[d] a claim" or "settle[d], compromise[d], release[d], or waive[d] a claim against a third party." *Id.* § 26–19–7(1)(a). This is true even if the recipient obtained consent to seek a recovery on the State's behalf.

¶ 17 In the instant case, McCoy cannot recover costs from the State because no "action" was commenced against a third party; rather, McCoy "settle[d]" and "compromise[d]" with the third party, and Sevey "release[d]" the third party from any further claims by Sevey. *Id.* As a result, even if McCoy had obtained consent to bring the State's claim, the State would have no duty to reimburse him for costs, so long as he settled without "commenc[ing] an action" on the State's behalf. *Id.*

■ ¶ 18 However, unlike the statute's limited provision for costs, the portion of subsection (4) that provides for attorney fees is not restricted to reimbursement for fees incurred in an "action"; nor is it limited to those cases in which the State grants its consent. Rather, the plain language of the attorney fees provision simply states that "[t]he department may not pay more than 33% of its total recovery for attorney's fees." *Id.* § 26–19–7(4). Thus, in contrast to what the State suggests, the attorney fees portion of subsection (4) in no way limits the award of fees to recipients who obtained consent to pursue the State's claim. Moreover, the

State provides no statutory, case law, or policy basis for limiting awards of attorney fees to those recipients to whom the State, at its discretion, grants consent. We see no justification for so limiting the relatively broad reach of subsection (4) in the case before us. In fact, it would be inherently unfair not to award attorney fees to McCoy, who has followed the requirements of the Act in securing a recovery on behalf of his client.[4] We therefore conclude that under subsection (4), when the State elects to recover directly from a recipient who has expressly excluded the State's claim from any attempt to recover from a third party, the State must pay the attorney fees incurred in procuring the State's share of the settlement proceeds.[5]

¶ 19 In sum, while the Act provides discretion to the State when selecting a suitable avenue for recovering medical assistance, each method of recovery requires the State to pay its share of attorney fees. The State may (1) take action directly against the third party, for which the State pays its own expenses; (2) grant consent to recipients seeking to pursue the State's claim, whereby the State's recovery will be reduced by reasonable attorney fees and, if any, its proportionate share of the costs of an action; or (3)

refuse consent and proceed against the recipient after the recipient recovers from the third party, in which case the State's recovery shall be reduced by reasonable attorney fees.

## CONCLUSION

¶ 20 We affirm the judgment of the trial court to the extent it held that the State is entitled to recover $8,846.92 from McCoy, but reverse to the extent the court failed to reduce the State's recovery by McCoy's reasonable attorney fees for procuring the State's share of the settlement proceeds. We therefore remand for a determination of attorney fees to be awarded McCoy and other appropriate action consistent with this opinion.

¶ 21 Justice DURRANT concurs in Associate Chief Justice RUSSON's opinion.

DURHAM, Justice, concurring:

¶ 22 As the majority opinion notes in footnote 6, the State's actions in this case, although permitted by the statute, have in my view unfairly penalized the injured person. The injured person's net recovery has been

---

4. The State suggested at oral argument that McCoy should not be entitled to attorney fees because he failed to inform the State that Great American was the insurer with whom he was settling Sevey's claim. We emphasize that a recipient has a duty to cooperate with the State in identifying and providing information to assist the State in pursuing any third party who may be liable to pay for medical care and services. See 42 C.F.R. § 433.147 (1999); Utah Admin. Code R527–800–8, R527–936–2 (1997). Keeping the State informed ensures that the State will not be prejudiced in its efforts to recover medical benefits. For example, withholding the identity of the third party from the State may jeopardize the State's ability to preserve its claim against the third party. In order to bring a claim for reimbursement against a third party, the Act requires the State to provide notice of its lien to the third party before the third party settles with the recipient. See Utah Code Ann. § 26–19–5(3)(a) (1998).

In the instant case, McCoy failed to keep the State minimally informed, but McCoy's lack of forthrightness did not prejudice the State's claim against the third party. Even though the State was unable to provide notice to the proper third party before the settlement, notice from the State is not necessary under the Act when "the third

party had knowledge that the department provided or was obligated to provide medical assistance." Id. § 26–19–5(3)(b). McCoy informed the third party that the State had provided medical assistance to Sevey and that the State intended to enforce its lien directly against the third party. Thus, McCoy effectively preserved the State's right of action under the Act against the third party. We therefore need not address the question today of whether the legislature intended not to award attorney fees to a recipient whose "failure to cooperate" prevents the State from recovering from a third party.

5. Having elected not to recover directly from the third party in the case before us, the State not only incurred a responsibility to pay attorney fees, but also effectively reduced Sevey's net recovery. As a result, neither the State nor Sevey will recover the $8,846.92 that Sevey excluded from his claim against the third party. This is because the State's lien under the Act is limited to the $8,846.92 of medical expenses that the State provided, and by enforcing its lien against McCoy, the State can no longer pursue its claim against the third party. Likewise, Sevey cannot seek the additional $8,846.92 because Sevey released the third party as a condition of settlement.

reduced by over $8,000 because the State neither consented to allow the injured person to seek recovery for the State's claim against the third-party tortfeasor, nor itself sought such recovery. I hope that the legislature will reexamine this portion of the statute, which refills the state coffers out of money belonging to injured parties rather than the funds of the third-party tortfeasor liable for the injuries. The State is, of course, entitled to reimbursement, but it ought to have to "fish or cut bait" in the process of obtaining that reimbursement from third parties.

WILKINS, Justice, concurring in part, dissenting in part:

¶ 23 I respectfully dissent with respect to part III. I fully concur with the remainder of the majority opinion.

¶ 24 "In Utah, attorney fees are awardable only if authorized by statute or by contract." *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988). In this case, there·is neither a contract nor a statute by which McCoy is entitled to fees from the State.

¶ 25 There is no question that McCoy did not enter into a contractual arrangement with the Office of Recovery Services. He offered to do so, and to file a claim on behalf of the State for reimbursement for sums expended by the State. The State declined his offer. McCoy then filed his action seeking to recover for the injured Mr. Sevey an amount over and above that potentially due the State.

¶ 26 McCoy failed to alert the State when he discovered that he had previously misinformed the State of the proper insurance company. This failure significantly diminished the State's ability to alert the third party of the State's claim, or to participate in any settlement negotiations. McCoy rendered no service to the State that would have assisted the State in recovering its portion of the reimbursement directly from the third party. As authorized by statute,[1] the State sought its recovery from the proceeds received by Mr. Sevey. The State has a statutory lien on this amount,[2] and any recovery accrues first to the State to replenish the public coffers prior to compensating either Mr. Sevey or his attorney.

¶ 27 The majority relies upon the language of subsection (4) of section 26-19-7 in finding an obligation on the part of the State to pay McCoy an attorney fee from the recovered amount. Subsection (4) reads:

(4) The department may not pay more than 33% of its total recovery for attorney's fees, but shall pay a proportionate share of the costs in an action that is commenced with the department's written consent.

Utah Code Ann. § 26-19-7(4) (1998). I find nothing in this statutory language that requires any payment to McCoy when the department declined to give written consent. I read this language simply as a limitation on the maximum fees that may be paid when written consent has been given, without a limitation on the State paying its proportionate share of costs for the same action.

¶ 28 I disagree with my colleagues that the statutory language above quoted "in no way limits the award of fees to recipients who obtained consent to pursue the State's claim." I think it does just that: When an action is commenced with the State's consent, any payment for attorney fees by the State is limited to a maximum of 33% of its total recovery. Moreover, that is all the statute does. It simply does not address any obligation or lack of obligation to pay attorney fees when the State's consent is not given.

¶ 29 I find no other statutory basis, nor do my colleagues identify one, that authorizes the State to pay McCoy his claimed fee from the public coffers. Absent a statute, or contract, providing such an authorization, I would hold that McCoy is not entitled to his fees in this case.

¶ 30 The legislature has granted the Office of Recovery Services the discretion to consent or not to consent to the representation of a particular attorney. Even if this is "inherently unfair" as my colleagues suggest, it is simply the law: The policy choice has been made by the legislature in this instance,

---

1. *See* Utah Code Ann. § 26-19-7(2) (1998).

2. *See id.* § 26-19-5(1).

and challenges to the fairness of the policy must be addressed to them.

¶ 31 I would affirm the judgment of the trial court.

¶ 32 Chief Justice HOWE concurs in Justice WILKINS' concurring and dissenting opinion.